IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE PADALINO, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE STANDARD FIRE INSURANCE | : | NO. 2:08-cv-01553 |
| COMPANY, et al. | : | |

Legrome D. Davis, J.                                                                       October 15, 2008

## MEMORANDUM

Presently before the Court are Defendant WNC First Insurance Services' Motion to Dismiss Plaintiffs' Complaint (Doc. No. 5), Plaintiffs' Response in opposition (Doc. No. 11), Defendant WNC First Insurance Services' Reply thereto (Doc. No. 16), Defendant The Standard Fire Insurance Company's Motion to Dismiss (Doc. No. 7), Plaintiffs' Response in opposition (Doc. No. 10), and Defendant The Standard Fire Insurance Company's Reply thereto (Doc. No. 12). For the reasons set forth below, the Motion by Defendant WNC First Insurance Services is denied, and the Motion by Defendant The Standard Fire Insurance Company is granted in part and denied in part.

I.      FACTUAL BACKGROUND

In 2004, Plaintiffs Lawrence and Hope Padalino sought to purchase two plots of land in Accomack County, Virginia. Before making the purchase, Plaintiffs contacted Defendant WNC First Insurance Services ("WNC First"), an insurance broker serving as an agent for Defendant The Standard Fire Insurance Company ("Standard Fire"), to inquire into flood insurance

1

coverage for the property. Following this conversation, Plaintiffs decided to purchase the two Virginia lots and insure the properties against flood damage through Defendant Standard Fire.

When a storm flooded the Virginia lots on September 1, 2006, Plaintiffs submitted a claim to Standard Fire for the flood damage to the properties. Defendant Standard Fire denied Plaintiffs' claim on November 27, 2006, for failure to submit a documented proof of loss within sixty days of the loss. (Def. WNC First's Mot. Dismiss, Ex. A.) When Plaintiffs submitted additional information related to their claim, Defendant Standard Fire responded with a letter on January 25, 2007, giving two reasons for their decision to deny the claim. (Id.) First, Standard Fire re-asserted Plaintiffs' failure to submit a documented proof of loss within the allotted time. (Id.) Second, Standard Fire stated that the issuance of payment under the policy was not authorized because Plaintiffs' properties were ineligible for flood insurance under federal law. (Id.) Specifically, the letter referenced the National Flood Insurance Program's ("NFIP") policy prohibiting insurance coverage of buildings within areas subject to the Coastal Barrier Resources Act ("CBRA"). (Id.) Because Plaintiffs' properties fell within these coastal barrier areas, the letter continued, Plaintiffs' policy was "void[] back to [its] original inception." (Id.) Defendant Standard Fire consequently denied Plaintiffs' claim and returned their premiums.

After receiving this letter, Plaintiffs filed suit against Defendants in this Court on April 1, 2008, seeking redress, not for Defendants' refusal to issue payment on Plaintiffs' flood claim, but for the Defendants' conduct during policy procurement. (Compl. ¶¶ 14-21.) In their complaint, Plaintiffs assert the following causes of action: fraud, negligence, negligent misrepresentation, breach of contract, breach of implied warranty, violations of the Pennsylvania Unfair Insurance Practices Act, 40 P.S. Section 1171, et seq., and violations of the Pennsylvania bad faith statute,

42 Pa. Cons. Stat. Ann. Section 8371.  (Id.)  Defendants now bring separate motions to dismiss the complaint.

II.     LEGAL STANDARD

When evaluating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), we must accept as true all factual allegations set forth in the complaint.  See Fed. R. Civ. P. 12(b)(6); Malia v. General Electric Co., 23 F.3d 828, 830 (3d Cir. 1994).  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007), and a court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks omitted).  In other words, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S. Ct. 1955, 1965 (2007)) (ellipses in original).  Therefore, a claim may be dismissed when the facts alleged and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought.  See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179-80 (3d Cir. 1988).

III.    DISCUSSION

The Defendants in this case raise several arguments in their separate motions to dismiss. Defendant WNC First argues that the National Flood Insurance Act (NFIA), which established the NFIP, acts to preempt Plaintiffs' claims, all of which are based in state law.  While Defendant WNC First makes a general attack on all of Plaintiffs' causes of action, Defendant Standard Fire makes specific challenges to each category of Plaintiffs' claims.  Defendant Standard Fire asserts that Plaintiffs' tort claims are barred by the statute of limitations, that Plaintiffs' claims under the

Unfair Insurance Practices Act, 40 P.S. Section 1171, et seq., are barred because there is no private right of action under that Act, that Plaintiffs' claims under the Pennsylvania bad faith statute, 42 Pa. Cons. Stat. Ann. Section 8371, are barred because Plaintiffs failed to allege bad faith in claim handling, that Plaintiffs' breach of contract claim is barred by Pennsylvania's "gist of the action" doctrine, and that Plaintiffs' breach of implied warranty claim is preempted by the NFIA. We will address each of these challenges in turn.

    1.    <u>Preemption by the NFIP</u>

The NFIP is a federally subsidized flood insurance program established by the NFIA and administered by the Federal Emergency Management Agency ("FEMA"). 42 U.S.C. § 4011. Congress created this program in order to address the inability of the "private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b). While payment of all flood insurance claims is made out of the National Flood Insurance Fund of the U.S. Treasury, FEMA has authorized private insurers (such as Defendant Standard Fire) to issue Standard Flood Insurance Policies (SFIPs) that comply with federal law. 42 U.S.C. §§ 4017(a), 4051; 44 C.F.R. § 61.13(f). These private insurers are known as "Write Your Own" ("WYO") insurance companies and may not alter, amend, or waive the codified terms of SFIPs without prior government approval. 44 C.F.R. §§ 61.4(b), 61.13(d), 61.13(f). WYO insurers are reimbursed for all "cost incurred in the adjustment and payment of any claims for losses," 42 U.S.C. § 4017(d)(1), as well as any litigation expenses associated with defending claims. 44 C.F.R. pt. 2, app. A, art. III(D)(2).

Defendant WNC First asserts in its motion to dismiss that all state law claims are preempted by the NFIA and that therefore all of Plaintiffs' claims should be dismissed. (Def.

WNC First's Mot. Dismiss, 3-5.)  There are two flaws in WNC First's argument.  First, the scope of NFIA preemption does not extend to the types of claims brought by Plaintiffs.  While courts have generally recognized that the NFIA preempts state law remedies involving coverage or claims handling disputes, they have not held that the NFIA preempts state law remedies involving SFIP procurement.  Second, even if the NFIA did preempt the types of claims raised by Plaintiffs, the NFIA does not have any preemptive force where an insured has no valid SFIP under federal law.

We will first address the scope of NFIA preemption.  In C.E.R. 1988, Inc. v. The Aetna Casualty and Surety Co., the Court of Appeals for the Third Circuit decided that the NFIA preempted state law claims that are based on the handling and adjustment of a claim made under an insured's SFIP because the "application of state law would impede Congress's objectives" in reducing "fiscal pressure on federal flood relief efforts." 386 F.3d 263, 270 (3d Cir. 2004).  The Third Circuit however has not dealt with the preemption issue in a case involving misrepresentations made during the procurement of a SFIP.  See id. at 271 n.12 ("We need not decide today whether a case alleging misrepresentation in claims procurement would also be preempted.").

Many courts have recognized this distinction between claims handling and policy procurement when dealing with questions of NFIA preemption.  See, e.g., Spence v. Omaha Indem. Ins. Co., 996 F.2d 793, 796 (5th Cir. 1993) (finding that the legislative purposes behind the NFIP that impel the "conclusion that federal common law governs claims under flood insurance policies . . . do[] not apply in actions for tortious misrepresentation against WYO insurers"); Reeder v. Nationwide Mut. Fire Ins., 419 F. Supp. 2d 750, 761 (D. Md. 2006)

(holding that "state law tort claims arising out of alleged misrepresentations made during the procurement of an SFIP are not preempted); Messa v. Omaha Prop. & Cas., 122 F. Supp. 2d 513, 521 (D.N.J. 2000) (noting that "policy procurement is an entirely different creature than claims handling"). Other courts have decided not to apply such a distinction. See, e.g., Moffett v. Computer Scis. Corp., 457 F. Supp. 2d 571, 588 (D. Md. 2006) (holding that "the argument for conflict preemption as to procurement fraud claims [is] no less persuasive than the argument for conflict preemption of claims handling fraud"); Scritchfield v. Mut. of Omaha Ins. Co., 341 F. Supp. 2d 675, 680 (E.D. Tex. 2004) (finding that the NFIA, and regulations issued by FEMA, "effectively preempted all state law claims," even those involving misrepresentations in policy procurement). The Eastern District of Pennsylvania, like the Third Circuit, has identified the existence of this issue but has not yet resolved it. See Neill v. State Farm Fire & Cas. Co., 159 F. Supp. 2d 770, 775-76 (E.D. Pa. 2000) (specifically limiting the "decision to cases concerning claims handling disputes"). Thus, this issue is one of first impression for this Court.

Any preemption analysis begins with the "basic assumption that Congress did not intend to displace state law." Bldg. & Constr. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors of Mass./R.I., Inc., 507 U.S. 218, 224 (1993) (quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981)). Nevertheless, a court may conclude that federal law "preempts state law under one or more of three theories: express preemption, field preemption . . . and conflict preemption." C.E.R. 1988, Inc. v. The Aetna Casualty and Surety Co., 386 F.3d 263, 269 (3d Cir. 2004) (citing Green v. Fund Asset Mgmt., 245 F.3d 214, 222 (3d Cir. 2001)). We find that the NFIA does not preempt Plaintiffs' claims under any of these theories.

Express preemption occurs "when a statute or regulation contains explicit language to

6

that effect." Id. (citing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992)). While the NFIA contains no language expressly preempting state law, FEMA issued regulations in 2000 that amend the terms of the SFIP by expressly declaring the supremacy of federal law over some state law claims. Article IX of the SFIP for dwellings reads: "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA." 44 C.F.R. pt. 61, app. A(1) (2007). Although this provision expressly preempts state law remedies for claims handling, it does not expressly preempt state law disputes relating to policy procurement. Because there can be no express preemption without explicit language to that effect, federal law does not expressly preempt Plaintiffs' claims.

 Conflict preemption can occur in two situations: "when . . . it is impossible to comply with both the state and federal law, or . . . when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." C.E.R. 1988, Inc., 386 F.3d at 269 (quoting Green, 245 F.3d at 222). It is certainly possible to comply with both state and federal law in this case: A WYO insurer can market SFIP insurance policies that comply with federal law without making negligent or fraudulent misrepresentations and without making implied warranties or oral promises of due diligence during the course of the sale. Thus, for the NFIA to preempt state law remedies involving SFIP procurement, the state law must serve as an obstacle to congressional goals.

 Although the Third Circuit has held that the application of state law in claims handling disputes "would impede Congress's objectives," C.E.R. 1988, Inc., 386 F.3d at 270, the logic behind the Court's decision does not extend to the policy procurement context. The Court in C.E.R. 1988, Inc. found that "a central purpose of the [NFIP] is to reduce fiscal pressure on

federal flood relief efforts" and that "[s]tate tort suits against WYO companies . . . undermine this goal." Id. at 270 (citing Till v. Unifirst Fed. Sav. & Loan Ass'n, 653 F.2d 152, 159 (5th Cir. 1981)). However, while FEMA reimburses WYO companies for litigation expenses associated with defending suits involving claim handling, it is not clear that FEMA reimburses WYO companies for their expenses in defending all suits involving SFIP procurement. FEMA regulations provide that, where the agency determines that "litigation is grounded in actions by the [WYO company] that are significantly outside the scope of this Arrangement,[1] and/or involves issues of agent negligence," the WYO company will not be reimbursed for "any award or judgment for damages [nor for] any costs to defend such litigation."[2] 44 C.F.R. pt. 62, app. A, art. III(D)(3)(a-b). Indeed, the NFIA states that the FEMA Administrator "may not hold harmless or indemnify an agent or broker for his or her error or omission." 42 U.S.C. § 4081(c). Moreover, federal regulation provides that, because SFIPs are "authorized only under terms and conditions established by [federal law] . . . [any] representations regarding the extent and scope

---

[1] The words "this Arrangement" refer to the agreement between FEMA, the Federal Insurance Administration, and the WYO insurance company for financial assistance and subsidies. 44 C.F.R. pt. 62, app. A.

[2] In an amicus brief filed in Gallup v. Omaha Property and Casualty Insurance Co., the United States asserts that this provision protects FEMA from "responsibility for egregious conduct totally outside of the Arrangement, such as an assault by an employee of the WYO Company on an insured party." Brief for United States as Amicus Curiae in Support of Defendant-Appellant, Gallup v. Omaha Prop. & Cas. Ins. Co., 434 F.3d 341 (5th Cir. 2005) (No. 04-00063), 2004 U.S. 5th Cir. Briefs, *29. However, the Federal Register states that the "significantly outside the scope of the Arrangement" standard for reimbursement includes "those decisions related to a pattern of errors" by the WYO company. NFIP Assistance to Private Sector Property Insurers, 69 Fed. Reg. 45,607, at 45,608 (July 30, 2004). This entry in the Federal Register makes clear that the WYO company's conduct need not constitute an intentional tort in order for FEMA to deny reimbursement and that a "significant" departure from the Arrangement was not meant to require "egregious conduct."

of coverage which are not consistent with [federal law] are void, and the duly licensed property or casualty agent . . . does not act as agent for the Federal Government." 44 C.F.R. § 61.5(e). Taken as a whole, these provisions "evince[] an intent to prevent expansion of SFIP coverage through misrepresentations by private parties involved with the [NFIP], thereby protecting the government from expanded liability." Spence v. Omaha Indem. Ins. Co., 996 F.2d 793, 797 (5th Cir. 1993). Because FEMA need not reimburse WYO companies for litigation expenses associated with actions beyond the scope of their arrangement, state law claims against WYO companies in the context of SFIP procurement should not interfere with Congress's objective of providing affordable flood insurance to the public. Consequently, the state law in this context does not stand as an obstacle to the goals of the NFIA.

In fact, state law claims relating to SFIP procurement may be necessary to achieve federal objectives. The Court in C.E.R. 1988, Inc. noted that the "federal Government also has an interest in preventing fraud by its insurers." 386 F.3d at 270 n.8. The Court however decided that, "because a WYO insurer profits by *paying* a claim, the ordinary rationale for state tort law is largely inapplicable to the [NFIP's] context." Id. (emphasis in original). In other words, there is no incentive for a WYO insurance company to arbitrarily refuse an insured's claim because the funds to pay the claim come from the U.S. Treasury, and not the WYO insurance company. But in the context of SFIP procurement, when the WYO insurer is competing with other companies for potential customers, the incentives for WYO insurers to make misrepresentations, promises, and warranties in order to make a profit are present. Thus, in the context of SFIP procurement, the federal government has an interest in preventing fraud by WYO companies as "fiscal agents" for the government in addition to providing affordable flood insurance. See 44 C.F.R. §

9

62.23(g). Preemption of state law by the NFIA "would leave an entire area of the insurance field unregulated and immunize private insurers no matter how egregious their conduct." Bleecker v. Standard Fire Ins. Co., 130 F. Supp. 2d 726, 736-37 (E.D.N.C. 2000). Without judicial oversight, WYO companies are effectively permitted to make misrepresentations about the SFIPs they are selling or promises they do not intend to keep, thereby harming the very people that Congress was trying to protect.

Because "we have long presumed that Congress does not cavalierly pre-empt state-law causes of action," this Court can "deem state law preempted only if that is the 'clear and manifest purpose of Congress.'" C.E.R. 1988, Inc., 386 F.3d at 269-70 (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). For the reasons stated above, we cannot say that the congressional objectives behind the NFIA clearly require preemption of the state law in the SFIP procurement context. Thus, there is no conflict preemption of Plaintiffs' claims in this case.

Finally, we must address field preemption, which exists where "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." C.E.R. 1988, Inc., 386 F.3d at 269 (quoting Cipollone v. Liggett Group, 505 U.S. 504, 516 (1992)). Preemption "of a whole field . . . will be inferred where the field is one in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" Hillsborough County v. Automated Med. Labs., 471 U.S. 707, 713 (1985) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). As previously discussed, in the absence of state law to regulate the conduct of WYO companies during SFIP procurement, an entire area of the NFIP would essentially go unchecked. Bleecker v. Standard Fire Ins. Co., 130 F. Supp. 2d at 736-37. Thus, it cannot be

said that Congress has thoroughly occupied this field of SFIP procurement when indeed the NFIA hardly occupies this field at all. Therefore, Plaintiffs' claims are not preempted by field preemption.

Neither express, field, nor conflict preemption supports the preemption by the NFIA of state law claims relating to SFIP procurement. But even if the NFIA did preempt such claims, a second reason supports our decision not to dismiss Plaintiffs' claims in this case. Although Plaintiffs thought that they had a valid SFIP from Defendant Standard Fire, and although Plaintiffs paid premiums as though they had a valid SFIP from Defendant Standard Fire, their policy was in violation of federal law and void from its inception. (See Def. WNC First's Mot. Dismiss, Ex. A.) Without a SFIP, the NFIP does not apply and the NFIA cannot extend to the relationship between the insurance company and their insureds. Therefore, the NFIA does not have any preemptive force where an insured has no valid SFIP under federal law, and Plaintiffs' state law claims are not preempted.

Because the scope of NFIA preemption does not extend to claims involving SFIP procurement and because Plaintiffs did not even have a valid SFIP by Defendants' own admission to trigger NFIA preemption, Defendant WNC First's motion to dismiss Plaintiffs' claims as preempted by the NFIA is denied.[3]

2.  Statute of Limitations

In its motion to dismiss, Defendant Standard Fire maintains that Plaintiffs' claims for

---

[3] Defendant WNC First's motion to dismiss also alleges that any claim that Plaintiffs make under the NFIA would fail because Plaintiffs failed to file a timely proof loss statement. Because Plaintiffs have asserted state law claims, and not claims under the NFIA, Defendant WNC First's argument is irrelevant, and we will not address it.

negligence, negligent misrepresentation, and fraud are barred by Pennsylvania's two-year statute of limitations.  According to Defendant Standard Fire, the causes of action accrued when Plaintiffs' insurance policies became effective in September 2004, and thus the limitations period expired before Standard Fire denied Plaintiffs' claim pursuant to the NFIP and well before Plaintiffs initiated this lawsuit.  (Def. Standard Fire's Mot. Dismiss, 5.)  We cannot accept Defendant Standard Fire's argument at this stage in the proceedings.

Under Pennsylvania law, the statute of limitations for fraud and negligence claims is two years.  42 Pa. Cons. Stat. Ann. § 5524(7).  This two-year limitations period begins to run from the time the cause of action accrues, and a cause of action accrues "as soon as the right to institute and maintain a suit arises, which generally is when the injury was inflicted."  Drelles v. Mfr. Life Ins. Co., 881 A.2d 822, 831 (Pa. Super. Ct. 2005) (citing Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005)).  While "mistake, misunderstanding, or lack of knowledge . . . do not toll the running of the statute," the discovery rule can toll the limitations period where "the injury or its cause was neither known nor reasonably knowable."  Id. (citing Fine, 870 A.2d at 857-58).  In other words, the discovery rule applies where an injured party is unable, "despite the exercise of reasonable diligence, to know that he has been injured and by what cause."  Id. (citing Fine, 870 A.2d at 858); see also Toy v. Metro. Life Ins. Co., 863 A.2d 1, 7 (Pa. Super. Ct. 2004).

Reasonable diligence as used in the discovery rule means "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case," Toy, 863 A.2d at 7 (quoting Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000)), where the party "has been given reason to inform himself of the facts upon which his right to recovery is premised."  Drelles, 881 A.2d at 831 (citing Fine, 870 A.2d at 858).  While there "are very few facts which

diligence cannot discover, . . . there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful." Toy, 863 A.2d at 7 (quoting Crouse, 745 A.2d at 611). Although reasonable diligence is an objective standard, it "take[s] into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." Id.

Any determination of a plaintiff's ability, in the exercise of reasonable diligence, to ascertain his injury and its cause involves a factual determination. Drelles, 881 A.2d at 832 (citing Fine, 870 A.2d at 858). Thus, this issue is generally decided by a jury, unless the court finds that "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause" and that therefore the discovery rule does not apply as a matter of law. Id. (citing Fine, 870 A.2d at 858-59).

We cannot hold as a matter of law at this time that Plaintiffs knew or should have known by the exercise of reasonable diligence that Defendants had misrepresented the validity of their insurance policies under federal law before the Plaintiffs' claims were denied by Standard Fire. In the complaint, Plaintiffs allege that they received assurances from Defendant WNC First that their properties were insurable and assert that they paid premiums for over three years to Defendant Standard Fire in exchange for policies on their properties. (Compl. ¶¶ 5, 9.) In other words, according to the complaint, both Defendants, either expressly or impliedly, represented to Plaintiffs that the policies on the properties were valid. Taking these allegations as true, we cannot say that it was unreasonable for Plaintiffs to trust the representations made by Defendants. Reasonable minds could find that, by relying on Defendants as sophisticated parties involved in the insurance business, Plaintiffs had no reason to conduct their own due diligence into the

insurability of their properties under federal law.  Without a reason to "awaken inquiry," one could find that it was reasonable for Plaintiffs to fail to discover Defendants' alleged misrepresentations until their claims were denied in 2007 pursuant to the NFIA.  Because we cannot find that Plaintiffs' should have discovered their injury and its cause with reasonable diligence at the time their policies were issued, we cannot hold as a matter of law that the discovery rule does not toll the statute of limitations in this case.

     Defendant Standard Fire insists that "the law charged Plaintiffs with constructive knowledge of their alleged injury."  (Def. Standard Fire's Reply Supp. Mot. Dismiss, 6.)  Some courts have held, as a matter of law, that insureds cannot reasonably rely on the misrepresentation of SFIP terms by WYO insurance agents for the purposes of fraud and negligent misrepresentation causes of action.  See Moffett v. Computer Sciences Corp., 457 F. Supp. 2d 571, 588 n.29 (D. Md. 2006) (discussing this issue in dictum and citing Richmond Printing, LLC v. Dir. FEMA, 72 Fed. Appx. 92, 98 (5th Cir. 2003); Larmann v. State Farm Ins. Co., No. 03-2993, 2005 U.S. Dist. LEXIS 2204, at *13 (E.D. La. Feb. 3, 2005); and Devarent v. Selective Ins. Co., No. 02-3801, 2004 U.S. Dist. LEXIS 8978, at *3 (E.D. Pa. Mar. 25, 2004), for this proposition).  In making this determination, these courts relied on two Supreme Court cases, Heckler v. Community Health Services, 467 U.S. 51 (1984), and Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380 (1947).  The Court in Heckler, 467 U.S. at 63, stated that "those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to the law," and the Court in Merrill, 332 U.S. at 384-85, held that

everyone has legal notice of all federal statutes and regulations.[4]

But neither Heckler nor Merrill dealt with reasonable reliance in the context of fraud or negligent misrepresentation much less reasonable diligence as used in the statute of limitations' discovery rule. Rather, these cases involved the government non-estoppel principle, which generally prevents parties from asserting the misrepresentation of a federal official as the basis of a contract claim against the government. This distinction is important. As explained by the Supreme Court in Federal Crop Insurance Corp. v. Merrill, "[t]he oft-quoted observation . . . that 'Men must turn square corners when they deal with the Government' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." 332 U.S. at 385 (quoting Rock Island, Ark. & Ill. R. Co. v. United States, 254 U.S. 141 (1920)). In other words, while we charge those dealing with the government with knowledge of the law, the need to assume constructive notice disappears in other contexts. Indeed, the Fifth Circuit in Spence v. Omaha Indemnity Insurance Co. noted in dictum that "the Merrill constructive notice rule in the context of an action asserting estoppel against the government" might not apply to "a tort claim against a private party." 996 F.2d 793, 797 n.23 (5th Cir. 1993). If we cannot logically assume constructive notice in the tort context, then neither can we assume constructive notice for purposes of reasonable diligence.

Moreover, Plaintiffs in this case held insurance policies that were void from their inception, and thus Plaintiffs never actually dealt with the government at all. (See Def. WNC First's Mot. Dismiss, Ex. A.) Federal regulations state that "representations regarding the extent

---

[4]  Both Heckler and Merrill based their holding in part on Rock Island, Ark. & Ill. R. Co. v. United States, 254 U.S. 141, 143 (1920), which stated that "[m]en must turn square corners when they deal with the Government."

and scope of coverage which are not consistent with [federal law] are void, and the . . . property or casualty agent . . . does not act as agent for the Federal Government." 44 C.F.R. § 61.5(e). As a result, Plaintiffs in the instant suit were not dealing with the government or its agents when they attempted to secure insurance policies through Defendants; rather, they were dealing with private insurers. Thus, Plaintiffs are outside the scope of the Supreme Court's decision in Heckler and Merrill, and we cannot charge Plaintiffs with constructive notice of federal law.

The public availability of the NFIA and related regulations are factors to consider in determining whether Plaintiffs reasonably relied on Defendants' express or implied assurances that their polices were valid or whether Plaintiffs had reason to inform themselves of restrictions placed on SFIP terms by federal law. But we cannot determine as a matter of law that Plaintiffs failed to engage in reasonable diligence. Therefore, Defendant Standard Fire's motion to dismiss Plaintiffs' tort claims as barred under the statute of limitations is denied.

3. Unfair Insurance Practices Act

Defendant Standard Fire claims that an insured does not have a private right of action under Pennsylvania's Unfair Insurance Practices Act, 40 P.S. Section 1171, et seq., and that thus Plaintiffs' claim under this statute must fail. (Def. Standard Fire's Mot. Dismiss, 9.) Plaintiffs agree and accordingly express their desire to withdraw this claim in their response to Standard Fire's motion to dismiss. (Resp. to Standard Fire Mot. Dismiss, 6-7.) Therefore, Defendant Standard Fire's motion to dismiss Plaintiffs' claim under Pennsylvania's Unfair Insurance Practices Act, 40 P.S. Section 1171, et seq., is granted.

4. Bad Faith Statute

Defendant Standard Fire states in its motion to dismiss that "bad faith" as used in the

Pennsylvania bad faith statute, 42 Pa. Cons. Stat. Ann. Section 8371, requires the unreasonable denial of benefits in the insurance context. (Def. Standard Fire's Mot. Dismiss, 9-10.) Because Plaintiffs' allegations in the complaint only relate to Defendants' conduct during policy procurement and not during payment or handling of Plaintiffs' claims, Defendant Standard Fire argues that Plaintiffs have failed to properly allege bad faith under the Pennsylvania bad faith statute, 42 Pa. Cons. Stat. Ann. Section 8371, and that therefore their claim under this statute must be dismissed. (Id. at 10-11.) Plaintiffs agree and accordingly seek to withdraw this claim in their response to Standard Fire's motion to dismiss. (Resp. to Standard Fire Mot. Dismiss, 7.) Therefore, Defendant Standard Fire's motion to dismiss Plaintiffs' claim under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. Section 8371, is granted.

     5.     Gist of the Action

According to Defendant Standard Fire in its motion to dismiss, Plaintiffs' claim for breach of oral contract should be dismissed under Pennsylvania's "gist of the action" doctrine because "plaintiffs' action plainly and indisputably sounds in tort." (Def. Standard Fire's Mot. Dismiss, 12-13.) We do not agree that the gist of the action doctrine applies to bar Plaintiffs' breach of contract claim.

The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." Etoll v. Elias/Savion Adver., 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (citing Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. Ct. 1992)). Generally, this doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." Id. (citing Bash, 601 A.2d at 829). That is not to say that a plaintiff cannot allege both tort and contract claims in his complaint: "[I]t is possible that a breach of contract

17

also gives rise to an actionable tort. To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." Id. (citing Bash, 601 A.2d at 829). "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Id. (quoting Redevelopment Auth. v. Int'l Ins. Co., 685 A.2d 581, 590 (Pa. Super. Ct. 1996)). "Whether the gist of the action doctrine applies is an issue of law. . . ." Id. at 15 (citing Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3rd Cir. 2001)).

Although Pennsylvania courts generally apply the doctrine to prevent contract claims from being recast as tort claims, Pennsylvania courts have suggested that the doctrine can also bar contract claims where a defendant's wrongful conduct is the gist of the action. See Craig v. Amateur Softball Ass'n, 951 A.2d 372, 377 (Pa. Super. Ct. 2008); Lebish v. Whitehall Manor, Inc., 57 Pa. D. & C.4th 247, 250-51 (Pa. Com. Pl. 2002). Nevertheless, there are several problems with Defendant Standard Fire's assertion that Plaintiffs' contract claims are barred.

First, courts have found that breach of contract claims and fraud in the inducement claims are not redundant and that therefore the gist of the action doctrine need not bar one or the other. See Etoll, 811 A.2d at 17 (summarizing Foster v. Nw. Mut. Life, 2002 U.S. Dist. LEXIS 15078 (E.D. Pa. July 25, 2002)); see also Air Prod. & Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp. 2d 329, 341-42 (E.D. Pa. 2003); Sullivan v. Chartwell Inv. Partners, 873 A.2d 710, 719 (Pa. Super. Ct. 2005). Torts committed in the inducement of a contract are "generally collateral to (i.e. not 'interwoven' with) the terms of the contract itself." Etoll, 811 A.2d at 17 (citing Foster, 2002 U.S. Dist. LEXIS 15078, at *7). These torts are more likely than fraud in the

performance "to present cases in which a social policy . . . external to the contractual obligations of the parties, exists." Air Prod. & Chems., Inc., 256 F. Supp. 2d at 341.  Because Plaintiffs' claims for fraud and negligent misrepresentation allegedly were committed in order to induce Plaintiffs to enter into a contract with Defendants, we do not find that Plaintiffs' breach of contract claim is redundant with these tort claims under the gist of the action doctrine.

A second problem with Defendant Standard Fire's argument is that courts are reluctant to classify the gist of plaintiffs' suit at an early stage in the proceedings and generally wait until discovery to determine "whether one claim is completely redundant to the other claim." Lebish, 57 Pa. D. & C.4th at 251.  This reluctance does not mean that the gist of the action doctrine never applies at the motion to dismiss stage—it simply means that plaintiffs may proceed under alternative theories of liability while it is premature to classify the gist of their suit.  While Plaintiffs have contended that Defendants negligently failed to ascertain whether the properties were insurable and subsequently breached an oral contract, we cannot yet determine whether Defendants' conduct rests primarily in contract or in tort or whether Defendants' conduct can properly be characterized as both.

Because we cannot determine at this stage whether Plaintiffs' breach of contract claim is redundant with Plaintiffs' negligence claim, Defendant Standard Fire's motion to dismiss Plaintiffs' breach of contract claim pursuant to the gist of the action doctrine is denied.

      6.      <u>Implied Warranties and Preemption by the NFIA</u>

Finally, Defendant Standard Fire argues that Plaintiffs' claim for breach of implied warranty should be dismissed because federal law prohibits implicit or implied terms in SFIPs and preempts any extra-contractual SFIP claims. (Def. Standard Fire's Mot. Dismiss, 14.)  While

we agree that the NFIA places limits on the contract claims that insureds can bring against WYO companies, we cannot accept the application of these limits where no SFIP exists.  As previously stated in our discussion on preemption, Defendants claim that Plaintiffs' SFIP was void from its inception.  (<u>See</u> Def. WNC First's Mot. Dismiss, Ex. A.)  Indeed, Plaintiffs allege that they had "a contractual relationship" with Defendants—they never assert that they had a valid SFIP.  (Compl. ¶ 19.)  Without a valid SFIP, there can be no prohibition of any of Plaintiffs' contract claims under the NFIA.  Therefore, Standard Fire's motion to dismiss Plaintiffs' claim for breach of implied warranty is denied.

IV.     CONCLUSION

Accordingly, Defendant WNC First's Motion to Dismiss (Doc. No. 5) is DENIED, and Defendant Standard Fire's Motion to Dismiss (Doc. No. 7) is GRANTED in part and DENIED in part.  An appropriate order follows.